UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
DAVID C. JOHNSON,                                         :

        Petitioner,                              :     05 Civ. 443 (GWG)

  -v.-                                                    :     <u>OPINION AND ORDER</u>

GARY FILION, Superintendent of                            :
Correctional Facility,
                                                                :
        Respondent.
                                                                :
------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

     David C. Johnson, proceeding <u>pro se</u>, brings this petition for writ of habeas corpus challenging his conviction in the Supreme Court of the State of New York, New York County, pursuant to his plea of guilty to Criminal Possession of a Controlled Substance in the Second Degree (New York Penal Law § 220.18(1)). Johnson, who is currently incarcerated at the Adirondack Correctional Facility in Ray Brook, New York, was ultimately sentenced to an indeterminate prison term of five years to life. The parties have consented to disposition of this petition by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons stated below, Johnson's petition is denied.

I. <u>BACKGROUND</u>

     A. <u>Evidence Presented at Suppression Hearing</u>

     On September 29, 2000, Sergeant John Fitzpatrick, Detective Michael Dunleavy, and Detective Richard Laura were working as part of the New York Police Department's Taxi Unit, patrolling precincts in midtown Manhattan to observe livery cabs and prevent violence against

their drivers. (See H. 6:10-11, 14-15).[1] At approximately 9:00 p.m., the officers observed a white livery cab in front of their unmarked police car, traveling east on West 42nd Street. (See H. 7:2-3; 10:19-23). The officers stopped the cab to alert the driver to what appeared to be a safety violation -- the "middle window of the partition [between the front and back seats] was open" -- and to "advise him that he should close the partition and let him know about the danger of keeping that partition open." (See H. 11:25; 12:1; 14:4-7). When Sergeant Fitzpatrick approached the cab, he smelled marijuana coming from the back seat of the cab, where Johnson was sitting. (See H. 14:16-17). He asked Johnson to step out of the cab, at which point Detective Dunleavy discovered a "partially smoked marijuana cigarette" in Johnson's hand. (See H. 19:7-8). A subsequent search uncovered marijuana in Johnson's pockets and crack cocaine in a bag on the back seat of the cab. (See H. 19:15-16; 20:1-4).

Contending that the police had unlawfully stopped the livery cab without probable cause, Johnson moved to suppress the drugs discovered during the search, as well as a statement he made to the police. See Brief for Respondent, dated June 2003 (reproduced as Ex. C to Declaration in Opposition to Petition for a Writ of Habeas Corpus, filed July 22, 2005 ("Decl. in Opp.") (Docket #6)) ("Resp. Br."), at 2. In a decision dated April 26, 2001, the trial court denied Johnson's motion. Id.

B. Johnson's Plea

Following the denial of his motion to suppress, Johnson entered into a plea agreement, under which he agreed to plead guilty to one count of criminal possession of a controlled

---

[1] "H." refers to the transcript of the pre-trial suppression hearing held February 7-8, 2001. "P." refers to the transcript of the plea allocution held November 7, 2001. "S." refers to the transcript of the sentencing proceedings held February 15, 2002. All are contained in Docket #7.

substance in the second degree, in full satisfaction of the indictment against him. (See P. 2:17-22). The court informed Johnson of the rights that he would be waiving by pleading guilty, including the right to a jury trial and the right to appeal. (See P. 5; 9). The court also confirmed that no one had "forced [Johnson] against [his] will to plead guilty," and that he was pleading guilty "of [his] own free will." (See P. 7:17-18, 25; 8:1). The court indicated that Johnson would be sentenced to five years to life, unless he was adjudicated a predicate felon, in which case he would be sentenced to six years to life. (See P. 3).

### C. Second-Felony Adjudication and Sentence

On February 15, 2002, the court determined that Johnson was a predicate felon and sentenced him to six years to life. (See S. 19; 23). Johnson's attorney, who had argued against the predicate felon finding, stated that he was reserving his right to appeal that determination, (see S. 17), even though he had "waived his right to appeal the suppression hearing." (See S. 27).

### D. Direct Appeal

Johnson's counsel appealed his adjudication as a second-felony offender. See Brief for Defendant-Appellant, dated October 2002 (reproduced as Ex. A to Decl. in Opp.), at 12-23. Johnson subsequently filed a pro se supplemental brief arguing that the search of the livery cab, his subsequent arrest, and the trial court's denial of his motion to suppress had violated his Fourth Amendment rights. See Supplemental Brief for Defendant-Appellant, undated (reproduced as Ex. B to Decl. in Opp.). According to Johnson, the initial stop of the livery cab was unlawful because the police had not observed a violation of any traffic law, rule, or regulation, and had no reasonable suspicion that he was committing or was about to commit a

3

crime. Thus, the drugs seized subsequently should have been suppressed. See id. at 1-14.

The District Attorney's office filed a brief in response to these claims, conceding that the trial court had erroneously adjudicated Johnson a predicate felon. See Resp. Br. at 4-9. With respect to his Fourth Amendment claim, the District Attorney argued that Johnson had knowingly and voluntarily waived his right to appeal, and that the claim in any event was without merit. See Resp. Br. at 10-18.

On September 23, 2003, the Appellate Division affirmed Johnson's conviction, but concluded that he had been improperly adjudicated a second-felony offender. It thus vacated Johnson's sentence and resentenced him to an indeterminate term of five years to life. People v. Johnson, 308 A.D.2d 384, 384 (1st Dep't 2003). The court also held that Johnson's "valid waiver of his right to appeal forecloses review of his suppression claim." Id. (citing People v. Kemp, 94 N.Y.2d 831 (1999)). The New York Court of Appeals denied Johnson leave to appeal. People v. Johnson, 1 N.Y.3d 574 (2003).

### E. The Instant Petition

Johnson timely filed the instant petition for habeas corpus relief. See Petition Under 28 U.S.C. 2254 for Writ of Habeas Corpus, filed January 14, 2005 ("Petition") (Docket #1). In his petition, Johnson raises the same two grounds for relief that he raised on his direct appeal. See Petition ¶¶ 14(A), (B). The government has filed papers in opposition to Johnson's petition. See Decl. in Opp.; Respondent's Memorandum of Law in Opposition to Petition for a Writ of Habeas Corpus, filed July 22, 2005 (Docket #6). Johnson has not filed any papers in reply.

II. APPLICABLE LEGAL PRINCIPLES

A petition for a writ of habeas corpus may not be granted with respect to any claim that has been "adjudicated on the merits" in the state courts unless the state court's adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

For a claim to be adjudicated "on the merits" within the meaning of 28 U.S.C. § 2254(d), it must "finally resolv[e] the parties' claims, with res judicata effect," and it must be "based on the substance of the claim advanced, rather than on a procedural, or other, ground." Sellan v. Kuhlman, 261 F.3d 303, 311 (2d Cir. 2001) (citation omitted). As long as "there is nothing in its decision to indicate that the claims were decided on anything but substantive grounds," a state court decision will be considered to be "adjudicated on the merits" even if it fails to mention the federal claim and no relevant federal case law is cited. See Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001); accord Rosa v. McCray, 396 F.3d 210, 220 (2d Cir. 2005) ("This standard of review applies whenever the state court has adjudicated the federal claim on the merits, regardless of whether the court has alluded to federal law in its decision.").

In Williams v. Taylor, the Supreme Court held that a state court decision is "contrary to" clearly established federal law only "if the state court applies a rule that contradicts the governing law set forth" in Supreme Court precedent or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives" at a different result. 529 U.S. 362, 405-06 (2000). Williams also held that habeas relief is available

5

under the "unreasonable application" clause only "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. A federal court may not grant relief "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411. Rather, the state court's application must have been "objectively unreasonable." Id. at 409.

Finally, under 28 U.S.C. § 2254(a), federal habeas review is available for a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Errors of state law are not subject to federal habeas review. See, e.g., Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). To be entitled to habeas relief, a petitioner must demonstrate that the conviction resulted from a state court decision that violated federal law. See, e.g., id. at 68.

III. DISCUSSION

    A. Second-Felony Offender Adjudication

In his first claim for habeas relief, Johnson contends that he was improperly adjudicated a second-felony offender. See Petition ¶ 14(A). Because this issue was resolved in Johnson's favor, see Johnson, 308 A.D.2d at 384, the claim is moot. See generally Village of Ilion v. Fed. Energy Regulatory Comm'n, 790 F.2d 212, 217-220 (2d Cir. 1986) (a dispute is moot when "the resolution of that dispute cannot affect the result as to the thing in issue in the case, because intervening events or judicial decisions have granted the relief sought, or rendered it irrelevant") (citations and internal quotations omitted).

6

B. Suppression Resulting from Allegedly Illegal Arrest

In his second claim for habeas relief, Johnson argues that the trial court erred in denying his motion to suppress the drugs that had been seized as a result of the search of the livery cab. See Petition ¶ 14(B). The Appellate Division held that Johnson's "valid waiver of his right to appeal forecloses review of the suppression claim[.]" Johnson, 308 A.D.2d at 384 (citing People v. Kemp, 94 N.Y.2d 831 (1999)).

It is not necessary to consider the respondent's argument that the Appellate Division's ruling constitutes an independent and adequate state ground barring habeas review of Johnson's claim. Because the only federal issue raised by this claim is that Johnson was the subject of an unreasonable seizure under the Fourth Amendment, it is barred by Stone v. Powell, 428 U.S. 465 (1976). Under Stone, a habeas petitioner seeking redress for a Fourth Amendment violation is not entitled to relief if the state courts provided him with "an opportunity for full and fair litigation" of his claim. Id. at 482. A habeas petitioner's Fourth Amendment claims may be reviewed only if "(a) if the state has provided no corrective procedures at all to redress the alleged fourth amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." Capellan v. Riley, 975 F.2d 67, 70 (2d Cir. 1992) (citing Gates v. Henderson, 568 F.2d 830, 840 (2d Cir. 1977)).

New York provides a corrective procedure in the form of a suppression hearing. See N.Y. Crim. Proc. Law § 710.10 et seq.; see Capellan, 975 F.2d at 70 n.1 ("'[F]ederal courts have approved New York's procedure for litigating Fourth Amendment claims . . . as being facially adequate.'") (quoting Holmes v. Scully, 706 F. Supp. 195, 201 (E.D.N.Y. 1989)). Thus,

7

only the second part of the test is applicable. Here, Johnson makes no claim that he was precluded from using New York's suppression hearing procedure – and, indeed, he availed himself of that procedure. The Second Circuit has squarely held that "once it is established that a petitioner has had an opportunity to litigate his or her Fourth Amendment claim (whether or not he or she took advantage of the state's procedure), the [state] court's denial of the claim is a conclusive determination that the claim will never present a valid basis for federal habeas relief." Graham v. Costello, 299 F.3d 129, 134 (2d Cir. 2002). "[A] mere disagreement with the outcome of a state court ruling is not the equivalent of an unconscionable breakdown in the state's corrective process." Capellan, 975 F.2d at 72.

Thus, this claim cannot support habeas relief.

## Conclusion

Johnson's petition is denied. Because Johnson has not made a substantial showing of the denial of a constitutional right, the Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c). In addition, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from the judgment would not be taken in good faith.

Dated: November 18, 2005
New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge

Copies sent to:

David C. Johnson
No. 02-R-0993
Adirondack Correctional Facility
P.O. Box 110
Ray Brook, New York 12977-0110

Luke Martland
Malancha Chanda
Assistant Attorneys General
120 Broadway
New York, New York 10271

only the second part of the test is applicable. Here, Johnson makes no claim that he was precluded from using New York's suppression hearing procedure – and, indeed, he availed himself of that procedure. The Second Circuit has squarely held that "once it is established that a petitioner has had an opportunity to litigate his or her Fourth Amendment claim (whether or not he or she took advantage of the state's procedure), the [state] court's denial of the claim is a conclusive determination that the claim will never present a valid basis for federal habeas relief." Graham v. Costello, 299 F.3d 129, 134 (2d Cir. 2002). "[A] mere disagreement with the outcome of a state court ruling is not the equivalent of an unconscionable breakdown in the state's corrective process." Capellan, 975 F.2d at 72.

Thus, this claim cannot support habeas relief.

## Conclusion

Johnson's petition is denied. Because Johnson has not made a substantial showing of the denial of a constitutional right, the Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c). In addition, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from the judgment would not be taken in good faith.

Dated: November 18, 2005
New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge